Chernoff, J.
At issue in this case is the applicability of the statute of repose[1] to actions brought under the Massachusetts Oil and Hazardous Materials Prevention and Response Act (“Chapter 2IE”).[2] The statute of repose imposes a strict six-year time limitation for bringing a suit in tort that involves improvements to land. Unlike the statute of limitations, the statute of repose does not take into account the date a plaintiff discovered the injury and it may bar a suit long before an injury occurs or is discovered. On an issue of first impression, this court rules that the statute of repose does not apply to actions under Chapter 2IE. The court further rules that, even if the statute of repose were deemed applicable to Chapter 2IE actions that involve claims of tortious conduct, it would not apply to Chapter 2IE actions predicated on a breach of contract. Moreover, the statute of repose would not time-bar Chapter 2 IE actions which sound in contract even if a concurrent theory within the Chapter action 2IE sounds in tort. Accordingly, the defendant’s Motion to Dismiss, which was denied without prejudice by the motion’s judge and referred to the trial judge, is now DENIED.
FACTS
Although this is a purely legal issue, the facts of this case are germane because they illustrate the issues and policies underlying the legal decision. In 1973 and 1974 the defendant James J. Welch & Co., Inc. was the general contractor on the construction site of the plaintiff Town of Weymouth’s East Junior High School. The defendant supervised, inter alia, the installation of a 15,000-gallon oil tank. The installers placed the tank in an excavated pit on a concrete pad. According to plaintiff, the defendant violated contract specifications and also the standard of due care when they failed to place the tank on a soft bed of sand. On April 14, 1987, the plaintiff Town learned of an oil spillage from the subject tank. Plaintiff then undertook to assess the contamination, contain the spillage, and remove the contaminated soil. Plaintiff contends it then discovered that, due to stresses caused by the absence of an appropriate sand cushion, a portion of the tank bottom had flattened over time and caused a rupture at a welded seam.
PROCEDURAL HISTORY
On April 10, 1992, the plaintiff filed a tort action against the defendant. The plaintiff amended the complaint on July 7, 1992 by adding a claim under Chapter 21E. The motions judge subsequently dismissed the common law tort claims on the grounds that the statute of repose operated to time bar the claims. The motions judge also denied without prejudice a motion to dismiss the surviving Chapter 2IE claim and reserved the motion for the further consideration of the trial judge. On September 3, 1996 and during the pendency of the trial, the defendant timely raised the issue with the trial judge.[3]
DISCUSSION
Plaintiff sought liability pursuant to G.L.c. 2 IE, §5(a)(5) and damages pursuant to §4. These sections provide as follows:
§5(a)(5) Any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material from a vessel or site, shall be liable, without regard to fault... (iii) to any person for damages to his real or personal property incurred or suffered as a result of such release or threat of release, . . .
§4 . . . Any person who undertakes a necessary and appropriate response action regarding the release or threat of release of oil or hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release for the reasonable costs of such response action . . .
*198 (emphasis added). The plaintiff sought to satisfy the “legally responsible” requirement by proving a breach of contract and a breach of the duty of due care. According to the plaintiffs theory of the case, the defendant was “legally responsible” for the oil spill because the defendant failed to ensure that the installers placed the tank on a bed of sand, in accordance with accepted trade practices at the time and in accordance with written specifications for the job. These theories sound in tort and contract respectively.
The defendant argues that the statute of repose bars all Chapter 2IE damages actions. The so-called “statute or repose” resides in the lower highlighted portion of §2B, below which reads as follows:
Actions of tort for damages arising out of any deficiency or neglect in the design, planning, construction, or general administration of an improvement to real property, other than that of a public agency as defined in section thirty-nine A chapter seven shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event such actions be commenced more than six years cfter the earlier dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possessionfor occupancy by the owner.
G.L.c. 260, §2B (1990 ed.) (emphasis added). The installation of the tank is an improvement to real property. Defendant contends that Chapter 2 IE damages claims sound in tort and, therefore, the statute of repose imposes a time limitation of six years from the installation of the tank. Such a limitation would bar this claim. Plaintiff responds that, similar to Chapter 93A actions,[4] Chapter 2IE recognizes statutory wrongs and remedies which sound neither in contract nor tort and hence the statute of repose is inapplicable and would not time-bar the suit.
Generally, a statute of limitations governs the time within which legal proceedings must be commenced after a cause of action accrues. Klein v. Catalano, 386 Mass. 701, 702 (1982). In cases involving an improvement to land, the statute of repose imposes additional limits to the time within which a plaintiff may bring an action. A statute of repose begins to run from the occurrence of the incident raising liability, not from the date of “accrual” which may be at a later time such as the discovery of the injury. The statute of repose may bar an action before the injuiy has occurred, much less has been discovered. Id. at 702. The purpose of limiting the duration of liability is to allow a potential defendant a “reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not to be called on to resist a claim ‘when evidence has been lost, memories have faded, and witnesses have disappeared.’ ” Id., 386 Mass. at 701 (quoting Rosenberg v. North Bergen, 61 N.J. 190, 201 (1972)). Of course, limiting the duration of liability also prevents some parties from seeking redress for their injuries even before they have had an opportunity to discover them.
I CHAPTER 2IE DOES NOT SOUND IN TORT FOR PURPOSES OF THE STATUTE OF REPOSE.
The original 1983 enactment of Chapter 2 IE failed to include a statute of limitations period for private actions. Trial judges, therefore, had to decide whether any limitations were applicable and, if so, whether to consider Chapter 2IE actions as torts and apply a three-year statue of limitations, or to consider them' as actions in contract and apply a six-year statute of limitations. Trial judges viewed these issues differently, and there was no consensus as well on when causes of action accrued. It is not surprising that the Supreme Judicial Court, in a case filed in 1988 and decided in 1992, held that Chapter 21E, read as whole, sounded more in tort than in contract for purposes of the statute of limitations, G.L.c. 260, §2A. Oliveira v. Pereira, 414 Mass. 66 (1992). This ruling effected no inordinate injustice to potential litigants. Although the three-year period in which to bring suit is the shortest of statutory periods, the discovery rule applies and the three-year clock does not start until there is a known injury or one which should be known. In fact, the court in Oliveira went on and stated that the statute of limitations clock for recovery of response costs pursuant to §4, did not start to run until assessment costs were paid by the aggrieved person who incurred the response costs. Oliveira 414 Mass. at 74.
The Oliveira court did not address the applicability of the statute of repose to Chapter 2IE. Characterizing Chapter 2 IE as a tort action for purposes of the statute of repose would be unjust to victims of environmental pollution and spoliation of property. Improvements to land, as in the instant case, often involve subsurface work which is covered over when the work is finished. A subsurface leak of gas, oil or toxins is likely to take upwards of a decade or more to be detected by man, a surface creature. In many instances, the public would essentially be stripped of its ability to enforce an important statutory remedy if all remedies were barred six years after substantial completion of the work. Because the effects of the statute of repose are so contrary to principles of fairness in regard to environmental pollution, this court finds that the Oliveira Court could not have intended that all Chapter 2 IE actions sound in tort for purposes of the statute of repose.
II THE LEGISLATURE DID NOT INTEND THE SIX-YEAR STATUTE OF REPOSE FOR TORTS TO LIMIT ENVIRONMENTAL LITIGATION UNDER CHAPTER 2IE.
In 1992, the Legislature amended Chapter 2 IE by adding §11A[5] and establishing a statutory three-year statute of limitations for private actions with a liberal discovery rule. The amendment ameliorates the potentially harsh consequences to a claimant not knowing that a hazardous spill has occurred by providing that:
*199 Actions by persons other than the commonwealth to recover for damage to real or personal properly shall be commenced within three years after the date that the person seeking recovery first suffers the damage or within three years after the date the person seeking recovery of such damage discovers or reasonably should have discovered that the person against whom the action is being brought is a person liable pursuant to this chapter for the release or threat of release that caused the damage, whichever is later.
G.L.c. 21E §11A(4) (1990 ed.). The section also states:
Actions brought by persons other than the commonwealth pursuant to sections four or four A to recover reimbursement, contribution or equitable share shall be commenced within three years after the person seeking such recoveiy discovers or reasonably should have discovered that the person against whom the action is being brought is a person liable pursuant to the provisions of this chapter for the release or threat of release for which such costs or liability were incurred, or within three years of the time when the person bringing the action first learns of a material violation of an agreement entered into pursuant to section four A, or within three years after the person bring action incurs all response costs, or within three years after payment by the person seeking contribution, reimbursement, or an equitable share for liability pursuant to the provisions of this chapter, or within three years after sending notice pursuant to the first paragraph of section four A, whichever is later.
The amendment accorded with the results of the Oliveira case which applied the statute of limitations period for torts. It is noteworthy that the Legislature, when adding a statute of limitations to Chapter 21E, could have, but did not add a statute of repose to this chapter. A statute of repose for environmental suits would likely have a substantially greater impact on barring litigation than would a statute of limitations and it must be assumed that the legislature was well aware of this when it considered the issue of limitations. In Commonwealth v. Owens-Corning Corp., 38 Mass.App.Ct. 600 (1995), the Appeals Court had occasion to consider a parallel situation. The legislature in 1986 enacted the “asbestos revival statute" which enlarged the time in which the government could bring suit to recover the cost of asbestos removal from public buildings. Suits were brought against manufacturers, materials suppliers, and installers. Installers complained that, had the legislature intended to enlarge the time for bring suits against them, it would have referred to the statute of repose in Chapter 260, §2B. The court ruled that “ So foreign to legislative usage is the phrase ‘statute of repose’ that we would not expect the Legislature to use it or refer to it when enacting a statute specially designed to breathe new life (for the benefit of public entities only) into liability that would otherwise have been extinguished by the passage of time.” Id, at 603. Likewise, here in enacting a statute of limitations in one chapter that gives life to litigation because of the inclusion of broad discovery and contingency rules that defer the starting of the clock on limitations, the legislature did not nullify this by failing to reference the statute of repose.
The Legislature enacted Chapter 21Ebecause liability and remedies under the common law were inadequate. For example, liability under Chapter 2 IE may be assessed against a person who is legally responsible for the release of oil or hazardous material without regard to fault so that neither negligence, trespass, nor breach of contract need be established. Moreover, the expansive remedies including, inter alia, assessment, containment, and removal costs are outside the ambit of traditional common law remedies. Chapter 2IE was enacted “to clarify and improve the Commonwealth’s capability for responding to releases of oil and hazardous material and to recover response costs from persons responsible for releases for which it has incurred such costs.” Wellesley Hills Realty Trust v. Mobil Oil Corp., 747 F.2d 93, 95 (D. Mass. 1990). The intent of the Chapter 21E statute is to reimburse people for cleaning up oil and hazardous waste spills that occurred long ago and are not easily discoverable, and where damages for removal are unclear. For purposes of the statute of repose, the accrual date of an action is irrelevant. There is therefore, no opportunity to take into account the fact that it can take a significant amount of time to discover and determine damages. The statute of repose, acting to bar actions otherwise brought in a timely manner under the Act, is incompatible with the goals of Chapter 2IE as reflected in §11A. If Chapter 2 IE is an indication that common law liability and damages were insufficient to protect the environment, it would be ironic to bar litigation because of a statute of repose which heretofore has applied only to common law torts.
Ill PARTICULAR CHAPTER 2 IE ACTIONS SOUND IN CONTRACT
Even though Chapter 2IE has been characterized as sounding mainly in tort for purposes of the statute of limitations, the Act contains many aspects of contract law. The damages pursuant to Section 5 are limited to diminution of the value of the really while Section 4 damages are limited to assessment, containment, and removal costs.
Even if the statute of repose applies to some Chapter 2IE actions, it is not applicable to Chapter 2IE actions predicated on a breach of contract. In a recent Superior Court case, plaintiffs brought suit against the company that installed their septic system when it subsequently failed to work properly. Lemrise v. Koska, 5 Mass. L. Rptr. No. 26 589 (September 30, 1996). After the Appeals Court remanded the case for trial on the Chapter 93A claim, the defendants for the first time contended that G.L.c. 260, §2B barred the Chapter 93A claims. The trial judge then dismissed the count that alleged the installer, by failing to comply *200 with certain regulations in the sanitary code, “chose to disregard the immediate and direct risk” to the plaintiffs safety and property. The court found that claim to resemble a tort and held that the statute of repose consequently barred it. However, the court refused to dismiss a claim under 93A for breach of an express warranty that the septic system would be in compliance with the sanitary code. The court found that “the gist of c. 93A claim predicated upon failure to comply with an express warranty obligation is contractual in nature,” and that, therefore, the statute of repose did not bar the claim. In Oliveira, the court established the three-year statute of limitations and rejected a six-year statute of limitations under Chapter 260, §2 as requested by the plaintiff. However, the court specifically noted that the record did not reflect an applicable contract. 414 Mass. 66, at 72 n.7.
Similarly, this court finds that a claim under 2IE which is predicated upon the failure to comply with provisions in a contract is contractual in nature. In the case at hand, the plaintiff clearly articulates a breach of contract theory within the Chapter 2IE action. Plaintiff alleges that the defendant is ‘legally responsible" under Section 5 for the release of oil because of defendant’s failure to follow the contract specifications which required that the tank be installed on a bed of sand. Therefore, the statute of repose is inapplicable to this claim. However, to preserve the appellate rights of the parties, the case may be submitted to the jury on special questions which separate the negligence and contract Chapter 21E responsibility issues.
CONCLUSION
The statue of repose, G.L.c. 260, §233, does not bar actions under G.L.c. 21E. A sense of fairness and the legislature’s intention dictate that actions under Chapter 2IE not be thwarted by a law as rigid and uncompromising as G.L.c. 260, §2B. The Legislature’s intention is, in part, manifest in the passage of §11A in 1992. §11A fails to mention the statute of repose and appears to be the sole governing law on when actions are time-barred today. Under that Section, accrual periods begin from the date harm could be known or ascertained. The legislature’s intention was to allow plaintiffs a fair opportunity to discover the harm and bring suit. Therefore, the legislature’s intention for actions filed before the 1992 amendments, as well as after those amendments, was to allow 2IE actions to be brought regardless of the statute of repose.
Even if the statute of repose bars some Chapter 21E actions, there is no need to consider all actions brought under the Act as actions in tort for purposes of the statute of repose. At the very least, an action predicated on a breach of contract, such as the one at hand, is not a tort for purposes of G.L.c. 260, §2B. In the present case, one of the theories of recovery in the case sounds in contract. The statute of repose would not apply to such a claim.
ORDER
The court DENIES the defendant’s motion to dismiss.

G.L.c. 260, §2B (1990 ed.).

G.L.c. 21E, Sections 1-18 (1990 ed).

Although the jury subsequently found for the defendant, it is appropriate to resolve this issue. If the plaintiff pursues an appeal of the judgment, the defendant should have the option of seeking an appellate resolution on this potentially dispositive matter.

The Massachusetts Consumer Protection Act.

St. 1992, c. 133, §309 was approved July 20, 1992, and by §599 made effective as of July 1, 1992.